IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK B., a Minor, By and through his Parent, KESHIA B., of York, PA,** | : | **CIVIL NO: 1:11-CV-00927** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE PARADISE PROTECTORY AND AGRICULTURAL SCHOOL, INC.,** *et al.*, | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Before the court are two motions to dismiss Plaintiff's amended complaint, one filed by Defendant Lincoln Intermediate Unit No. 12 ("LIU") (Doc. 47) and one filed jointly by The Paradise Protectory and Agricultural School, Inc.; Paradise School for Boys; Catholic Charities of the Diocese of Harrisburg, Pennsylvania, Inc.; and the Roman Catholic Diocese of Harrisburg ("Paradise Defendants") (Doc. 46). Defendants seek to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the motion will be granted in part and denied in part.

I.        **Background**

A.        **Facts**[1]

This action is brought by Plaintiff Patrick B. ("Patrick" or "Plaintiff"), a minor child, by and through his parent, Keshia B., seeking compensatory damages and reasonable attorneys' fees and costs under the Individuals with Disabilities

---

[1] As required when deciding a motion to dismiss, the court will accept as true all properly-pleaded factual allegations contained in the complaint.

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.; and Pennsylvania state law.  (Doc. 43, Amended Compl. ¶¶ 1, 54-62.)[2]

Plaintiff is a ten-year-old student who is eligible for special education services as a child with an Emotional Disturbance within the meaning of that term under the IDEA and its regulations.  (*Id*. ¶¶ 2, 7) (citing 34 C.F.R. § 300.7(c)(4).)  On January 23, 2008, due to escalating aggression toward peers and staff at Lincoln Charter School, Patrick, a first grade student at the time, was admitted as an inpatient to the Universal Community Behavioral Health York Partial Program, the Meadows Psychiatric Center ("Meadows").  (*Id*. ¶ 3.)

While Patrick was at Meadows, the School District of the City of York (the "District") became Patrick's local educational agency ("LEA") pursuant to 34 C.F.R. § 300.28.  (*Id*. ¶¶ 4, 42.)  The District contracted with LIU for the provision of special education services for Patrick.  (*Id*. ¶ 4.)  On February 25, 2008, the District issued a Notice of Recommended Educational Placement ("NOREP") for Patrick to attend The Paradise School for Boys ("Paradise").  (*Id*. ¶ 42.)  On February 28, 2008, Patrick's Individualized Education Program ("IEP") was revised.

---

[2]     Plaintiff's complaint is not a picture of clarity.  For example, the bulk of Plaintiff's complaint offers legal argument better suited for a brief, in contradiction to Federal Rules of Civil Procedure 8(a) and (d)(1).  Further, although Plaintiff clearly states he is seeking compensatory damages and attorneys' fees *under the IDEA*, Section 504, the ADA and Pennsylvania state law, (Doc. 43 ¶ 1), no count in the complaint seeks relief under the IDEA.  Count I, for example, sets forth claims against all Defendants under Section 504, while a second Count I, presumably meant to be Count II, sets forth an ADA claim against LIU.  Count II, presumably Count III, sets forth a negligence claim, stating that Paradise Defendants breached their duty under the IDEA, Section 504, the ADA and Pennsylvania state law.  Furthermore, in the section titled "Relief Requested" Plaintiff states that he seeks "monetary damages and reasonable attorneys' feeds and costs under Section 504, the ADA, and Pennsylvania law," *(Id.* ¶ 62), but does not make mention of the IDEA.

(*Id.* ¶¶ 4, 43.)  Pursuant to the IEP, LIU and the District determined that Paradise could meet Patrick's needs.  (*Id.* ¶ 4.)  On February 29, 2008, Keshia B. approved the NOREP, (*Id.* ¶ 45), and on March 4, 2008, Patrick started school in the Emotional Support program at Paradise (*Id.* ¶¶ 5, 45).  Patrick attended Paradise from March 4, 2008, through May 22, 2009.  (*Id.* ¶ 45.)

From March 2009 through May 15, 2009, Paradise noted twelve incidents of Patrick's escalating behavior.  (*Id.* ¶ 47.)  For example, on March 16, 2009, Patrick was suspended for one day for assaulting another student.  (*Id.* ¶ 46.)  On May 14, 2009, Patrick threw his math book on the floor.  (*Id.*)  When he was subsequently sent to the office, he continued to exhibit outbursts by kicking and banging his head against the wall.  (*Id.*)  Patrick was restrained and was suspended for two days.  (*Id.*)  The next day, May 15, 2009, Plaintiff shouted an obscenity at his teacher and then "went after" another student.  (*Id.*)  Patrick was restrained and he continued to kick the walls and bang his head while under restraint.  (*Id.*)  Patrick was again sent to the office and suspended for two days.  (*Id.*)  Following that incident, Patrick complained of pain in his left wrist and was sent to the nurse's office for treatment which included icing the sore areas.  (*Id.*)  Plaintiff alleges that Patrick's wrist was, in fact, broken.  (*Id.* ¶¶ 46, 48.)  Plaintiff's fractured wrist resulted in multiple hospital visits and caused Patrick to suffer from sadness and depression.  (*Id.* ¶ 48.)  A neuropsychological report conducted in September, 2010 concluded that repeated restraints in the educational setting had reduced Patrick's initiative and engagement in the classroom.  (*Id.*)

Plaintiff's complaint alleges that Paradise and LIU knowingly failed to address Patrick's behavioral concerns, even in light of the increasing danger Patrick posed to himself and others.  (*Id.* ¶ 47.)  Plaintiff alleges that rather than taking adequate steps to control Patrick's behaviors, Defendants instead used increasingly

punitive and restrictive measures to address Patrick's behavior, resulting in escalating behavior and a serious injury.  (*Id.* ¶ 45, 47.)  Plaintiff also alleges that Plaintiff's revised IEP was substantively inadequate as a result of the failure to provide a Functional Behavior Assessment ("FBA"), the failure to incorporate appropriate Evaluation Reports ("ER"), and for failure to provide adequate academic goals.  (*Id.* ¶ 45.)  In short, Plaintiff is seeking relief because Defendants have "failed [to] [1] conduct appropriate evaluations to identify all of Patrick's educational needs, [2] to undertake an appropriate [FBA] and [3] to develop appropriate IEPs, as required by the IDEA and Section 504." (*Id.* ¶ 5.)[3]

## B.   Procedural History

Plaintiff, by and through his parent, brought this action on May 13, 2011.  (Doc. 1.)  Defendant LIU and Paradise Defendants filed motions to dismiss (Docs. 18 & 20) on September 6 and 9, 2011, respectively.  Defendant LIU argued that Plaintiff failed to exhaust his administrative remedies and failed to state a claim. Paradise Defendants joined in LIU's motion, and further argued for dismissal on the ground that Paradise Defendants are not "public entities" within the meaning of the ADA.  At the time, Plaintiff conceded that the Paradise Defendants are not "public entities" under the ADA and therefore did not oppose the dismissal of the ADA claim against those defendants.  The court ultimately granted the motion for failure to exhaust administrative remedies, and further noted for the record Plaintiff's concession that Paradise Defendants are not public entities under the ADA.  (Doc. 30.)  The court closed the case.

---

[3]      Plaintiff's original complaint also added to this list of charges that Defendants failed to provided Patrick with an appropriate educational placement, thereby denying Patrick a "free appropriate education" ("FAPE") as required by the IDEA and Section 504.  (Doc. 1 ¶ 6.)  Although Plaintiff's amended complaint does not reiterate that charge, it does clearly outline the particulars of the FAPE mandate under the IDEA (Doc. 43 at 17-22 and 34-35) and claim that Defendants' actions have caused Plaintiff to be denied a "safe, appropriate education program and placement."  (*Id.* ¶¶ 52, 56.)

On December 7, 2011, Plaintiffs filed a Motion to Alter or Amend Judgment as well as a Motion for leave to File an Amended Complaint and Motion to Supplement the Record.  (Docs. 31 & 33.)  In his proposed amended complaint attached to his Motion to File an Amended Complaint, Plaintiff essentially withdrew his request for declarative relief, which was the only relief that would have required exhaustion.  Finding exhaustion now not required, the court granted Plaintiff's motions and accepted the filing of the amended complaint.  (Doc. 42.)

On April 13, 2012, LIU filed a motion to dismiss the amended complaint and brief in support.  (Docs. 47 & 48.)  Paradise Defendants also filed their own motion to dismiss, joining LIU's motion and raising additional arguments, (Doc. 46), followed by a brief in support on April 25, 2012 (Doc. 50).  Plaintiff filed briefs in opposition to both motions to dismiss (Docs. 52 and 53) on April 27 and May 9, 2012 respectively.  On May 24, 2012, LIU filed a reply brief.  (Doc. 56.)  Thus, the motion is now ripe for disposition.

## II.      **Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted).  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

5

not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.        <u>Discussion</u>

Section 504 of the Rehabilitation Act and the IDEA provide many of the same protections. The IDEA, for example, requires that institutions receiving federal education funding provide a free and appropriate public education, or FAPE, to disabled children. 20 U.S.C. § 1412(a)(1). A school district provides a FAPE by designing and implementing an IEP that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 729 (3d Cir. 2009) (citations omitted). A school district must conduct an evaluation of the student's needs before providing special education and related services to the child. 20 U.S.C. § 1414(b). Moreover, the IDEA requires that a state have a system in place to identify, locate, and evaluate all children who have disabilities and need special education and related services. 20 U.S.C. §1412(a)(3); 34 C.F.R. § 300.111(a). In Pennsylvania, these "child find" duties are codified at 22 Pa. Code §§ 14.121-14.125.

Similarly, Section 504 provides that recipients of federal funds must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). Whereas the IDEA provides an affirmative duty to provide education, the Section 504 prohibits discrimination against the disabled. *Grieco v. New Jersey Dept. of Educ.*, 2007 U.S. Dist. LEXIS 46463, *11-12 (D.N.J., June 27, 2007) (citing *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995) (*abrogated on other grounds by, A.W. v. The Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007)). "There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." *Suscavage v. Bucks Cnty. Sch. Intermediate Unit,* 2002 U.S. Dist. LEXIS 1274, *50 (E.D. Pa. Jan. 22, 2002) (quoting *Matula*, 67 F.3d at 492-93). Similarly, the ADA also prohibits discrimination against the disabled. Like Section 504, ADA claims can be based on

the discriminatory effect on disabled children of seemingly neutral practices and do not require a finding of intentional discrimination. *See Suscavage,* 2002 U.S. Dist. LEXIS 1274, at \*53. Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time. *See Baker v. Southern York Area Sch. Dist.,* 2009 U.S. Dist. LEXIS 114375, \*6-7, n.3 (E.D. Pa. Dec. 8, 2009).

A key difference between Section 504, the ADA and the IDEA is that compensatory damages, while not available under the IDEA, are available under Section 504 and the ADA. *See Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 279 (3d Cir. 1996) (recognizing claims for monetary damages arising out of an alleged failure to provide a FAPE may be pursued under Section 504 and the ADA.) Plaintiff here is seeking only compensatory damages and attorneys' fees pursuant to Section 504 and the ADA, as well as Pennsylvania state law. (Counts I and II).

LIU, joined by Paradise Defendants, advances two arguments for dismissal of Plaintiff's claims. First, LIU argues that, pursuant to the applicable two-year statute of limitations, all claims that pre-date the filing of the complaint by more than two years should be dismissed. LIU also argues that Plaintiff's claims for money damages should be dismissed because Plaintiff has failed to plead the requisite showing of intent. The court will address each argument in turn. The court will then address Paradise Defendants' separately filed motion to dismiss.

### a. **Statute of Limitations**

Historically, courts, including this court, have applied Pennsylvania's statutory two-year personal injury statute of limitations to Section 504 claims, reasoning that because Section 504 does not have an explicit statute of limitations, courts should look to the most analogous state law statute of limitations. *See, e.g., Breanne C. v. Southern York Cnty. Sch. Dist.,* 655 F. Supp. 2d 504, 512 (M.D. Pa.

2009) (Rambo, J.); *Weidow v. Scranton Sch. Dist.*, 2009 U.S. Dist. LEXIS 73622, *20 (M.D. Pa. Aug. 19, 2009); *P.P. v. West Chester Area Sch. Dist.*, 557 F. Supp. 2d 648, 662 (E.D. Pa. 2008).  However, the Third Circuit Court of Appeals subsequently held that Section 504 claims premised upon IDEA claims are governed by the IDEA two-year statute of limitations, and not the Pennsylvania limitations period applicable to personal injury claims.  *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009).  In doing so, the court reasoned:

> The IDEA and § 504 of the Rehabilitation Act do similar statutory work.  The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide.  Section 504 of the Rehabilitation Act is parallel to the IDEA in its protection of disabled students: it protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE requirements, like the IDEA.  The Rehabilitation Act is certainly closer in subject matter and goals to the IDEA than to the Pennsylvania personal injury statute, which deals with torts against persons and property.

> * * *

> It does not make sense that the virtually identical claims made under these two statutes would be treated differently from a statute-of-limitations perspective: Congress has expressed an interest in promptly resolving disputes under the IDEA, as evidenced by its passage of the statute-of-limitations amendment.  If a plaintiff was barred from asserting an IDEA claim because the statute of limitations had run and neither of the exceptions applied, why should the identical claim, made under the Rehabilitation Act, be subject to different tolling principles?

> We are convinced that the IDEA's limitations period is a better fit for education claims made under the Rehabilitation Act than the personal injury statute of limitations.

*Id.* at 735, 736.[4]   The IDEA provides the following limitations period:

> (C) Timeline for requesting hearing.  A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

> (D) Exceptions to the timeline.  The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to--

> (ii) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or

> (ii) the local educational agency's withholding of information from the parent that was required under this part to be provided to the parent.

20 U.S.C. § 1415(f)(3)(C) and (D).  Although this limitations period is geared toward a request for a due process hearing, a party that wants to pursue only money damages for a FAPE-based claim, a remedy not available from the administrative hearing, will be subject to this statute of limitations in federal court.  *See Baker*, 2009 U.S. Dist. LEXIS 114375, at *12-13, n. 4.  Thus, the two-year IDEA statute of limitations applies to Section 504 FAPE-based claims.

Plaintiff argues for the application of Pennsylvania's minority tolling statute which would provide that the statute of limitations would not even begin to run until Patrick, now age ten, reaches the age of majority.  The court would accept

---

[4]   Plaintiff cites the Third Circuit's opinion in *Disabled in Action of PA v. SEPTA*, 539 F.3d 199 (3d Cir. 2008) which held that because neither the ADA nor Section 504 includes an express statute of limitations, Pennsylvania's two-year statute of limitations for personal injury claims is applicable.  That case, however, was not premised upon the denial of a FAPE and did not implicate the IDEA whatsoever.  Rather, that case involved a discrimination claim stemming from two subway stations that did not include elevators.  Accordingly, the court finds the Third Circuit's more recent decision in *P.P. v. West Chester Area School District* to be applicable in this instance.

this argument if the state statute of limitations were applicable, because when federal courts borrow the forum state's statute of limitations, all relevant state tolling rules are also incorporated. *See, e.g., Weidow*, 2009 U.S. Dist. LEXIS 73622, at *20.  But, as noted above, the federal IDEA's two-year limitations period is applicable to Plaintiff's claims and the IDEA only enumerates two specific exceptions to the statute of limitations that involve either misrepresentations or the withholding of certain information by the school district, neither of which are applicable here. Notably, the IDEA does not have a minority tolling provision and courts have routinely held that state minority tolling statutes do not apply where the federal law claim is governed by a statute of limitations enacted by the Congress of the United States. *See Baker*, 2009 U.S. Dist. LEXIS 114375, at *19 (gathering cases and finding that minority tolling not applicable on similar facts).  Thus, Plaintiff's argument fails.

The same reasoning applies to Plaintiff's argument that dismissal of any claim is inappropriate because the complaint alleges a continuing course of conduct. Here again, courts have found that claims premised upon the IDEA are "not subject to the continuing violation or equitable tolling doctrines, but instead can be extended only for one of the enumerated statutory exceptions." *Id.* at *20*; see also Evan H. v. Unionville-Chadds Ford Sch. Dist.*, 2008 U.S. Dist. LEXIS 91442, *14 (E.D. Pa. Nov. 4, 2008); *J.L. v. Ambridge Area Sch. Dist.*, 622 F. Supp. 2d 257, 269 (W.D. Pa. 2008).  Thus, the continuing violation doctrine is also inapplicable here.

Plaintiff attempts to circumvent the Third Circuit's decision in *P.P.* by arguing that his claims contain a strong personal injury component, and are not premised solely on Defendants' failure to provide a FAPE.  The court recognizes that Plaintiff does allege a personal injury.  Nevertheless, Plaintiff's Section 504 and

11

ADA claims are unquestionably rooted in Defendants' alleged failure to provide a FAPE, as Plaintiff admits.[5]   Indeed, Plaintiff is seeking relief because "Defendants have failed to (1) conduct appropriate evaluations to identify all of Patrick's educational needs, (2) undertake an appropriate FBA and (3) develop an appropriate IEP, as required by the IDEA and Section 504. (Doc. 43 ¶ 5.)  Thus, this case is more analogous to an IDEA case than a personal injury case, and the IDEA statute of limitations applies.

Accordingly, in light of the applicability of the two-year IDEA statute of limitations and the inapplicability of any continuing violation or equitable tolling doctrines, Plaintiff is limited to pursuing claims that accrued on or after May 13, 2009.[6]

### b. **Intentional Discrimination and Compensatory Damages under Section 504 and the ADA**

Defendants assert that Plaintiff's amended complaint fails to adequately plead that Defendants intentionally discriminated against Plaintiff on the basis of his disability.  In support, Defendants argue that in instances where a plaintiff brings a private cause of action to recover *compensatory damages* under Section 504 and the ADA, the plaintiff is required to make a showing of intentional discrimination. Plaintiff counters that the Third Circuit Court of Appeals has conclusively held that a plaintiff claiming a violation of Section 504 need not prove that a defendant's

---

[5]   Plaintiff states in his brief in opposition that "[P]laintiff does not assert claims sounding solely in Defendants' failure to provide a FAPE, *although the federal underpinnings of this obvious denial are related to Plaintiff's claim*."  (Doc. 52 at 13 of 55) (emphasis added).

[6]   LIU concedes in its reply brief that it is not attempting to use the statute of limitations to bar claims based on facts that transpired after May 13, 2009, two years prior to the filing of the original complaint.  Such facts include the alleged act of restraint on May 15, 2009, that was allegedly the result of a poorly designed IEP and inadequate evaluations.  (Doc. 56 at 3 of 11.)  Thus, the court is not convinced, at this point, that any claim can be dismissed in its entirety on statute of limitations grounds.

discrimination was intentional and that, in any event, the amended complaint sufficiently alleges intentional conduct.

Numerous district courts in this circuit have recently discussed this issue. The court's review of that case law, explained below, shows that plaintiffs must prove intentional discrimination to recover compensatory damages under Section 504 and the ADA. However, because Plaintiff's amended complaint sufficiently makes such a showing to withstand Defendants' motions to dismiss, the motions will be denied in this regard.

Plaintiff relies primarily on the Third Circuit Court of Appeals' decision in *Ridgewood Board of Educ. v. N.E.*, 172 F.3d 238 (3d Cir. 1999). In *Ridgewood*, the court held that "a plaintiff need not prove that defendant's discrimination was intentional" in order to state a Section 504 claim. *Id.* at 253. However, as noted by Judge Surrick in *Kaitlin C. v. Cheltenham Twp. Sch. Dist.*, 2010 U.S. Dist. LEXIS 20699, *21 (E.D. Pa. Mar. 5, 2010), "[c]ompensatory damages and their relationship to intentional discrimination were not at issue in *Ridgewood*." In determining that intentional discrimination must be proven where compensatory damages are sought, the court in *Kaitlin C.* noted that "[t]he remedies, procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under Section 504 . . . ." *Id.* at *14 (citing 29 U.S.C. § 794a(a)(2) and *Barnes v. Gorman*, 536 U.S. 181 (2002)). The court also noted that in *Guardians Ass'n v. Civil Serv. Comm'n of the City of New York*, 463 U.S. 582, 584 (1983) the Supreme Court held that private individuals can not recover compensatory damages under Title VI *except where they can prove intentional discrimination*. *See also Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001)

(same).  The court concluded that *Barnes, Guardians,* and *Sandoval*, make clear that compensatory damages under the ADA and Section 504 are only available upon a showing of intentional discrimination.  Many other district courts in the Third Circuit have come to the same conclusion.  *See Swanger v. Warrior Run Sch. Dist.*, 2012 U.S. Dist. LEXIS 87870, *17-20 (M.D. Pa. June 25, 2012); *Adam C. v. Scranton Sch. Dist.*, 2011 U.S. Dist. LEXIS 27423, *17-18, n.7 (M.D. Pa. Mar. 17, 2011); *David G. v. The Council Rock Sch. Dist.*, 2012 U.S. Dist. LEXIS 51427, *9 (E.D. Pa. April 12, 2012); *Chambers v. The Sch. Dist. of Phila. Bd. of Educ.*, 827 F. Supp. 2d 409, 421-22 (E.D. Pa. 2011).  Where compensatory damages are not sought, however, *Ridgewood* would not require a showing of intentional discrimination to state a denial of a FAPE under Section 504.

Although the Third Circuit Court of Appeals has yet to address whether intentional discrimination is required to be eligible for compensatory damages under the ADA and Section 504, Judge Pratter notes in *Chambers* that all other circuit courts that have considered the issue have held that compensatory damages are unavailable absent such a showing.  827 F. Supp. 2d at 422-23 (citing caselaw from the Second, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuit Courts of Appeals).

Plaintiff cites to several cases that defer to the language of *Ridgewood* and find that intentional discrimination is not required in cases involving compensatory damages.  For example, Plaintiff cites to *Allyson B. v. Montgomery Cty. Intermediate Unit No. 23*, 2008 U.S. Dist. LEXIS 45759 (E.D. Pa. June 12, 2008) where the court rejected the defendant's argument that claims for compensatory damages under Section 504 must allege intentional conduct, citing, *inter alia*, *Ridgewood*.  However, Judge Pollak, who authored *Allyson B.*, later

expressly rejected that holding in *David G.*, 2012 U.S. Dist. LEXIS 51427, at *9, noting that other district courts in the Third Circuit have held to the contrary and concluding that plaintiffs are required to prove intentional discrimination to recover monetary damages under the ADA or Section 504.

Plaintiff's also cite to *Vicky M. v. Northeastern Educ. Intermediate Unit*, 689 F. Supp. 2d 721 (M.D. Pa. 2009), wherein Judge Caputo, relying on *Ridgewood*, concluded that intentional discrimination need not be alleged in a Section 504 or ADA claim.  However, at that time, *Kaitlin C.* was not yet decided.   Judge Caputo subsequently authored *Adam C. v. Scranton Sch. Dist*, 2011 U.S. Dist. LEXIS 102981 (M.D. Pa. Sept. 3, 2011) wherein, relying on *Kaitlin C.*, he concluded that intentional discrimination is required to obtain compensatory damages under Section 504.  Very recently, Judge Mariani came to the same conclusion in *Swanger v. Warrior Run Sch. Dist.*, 2012 U.S. Dist. LEXIS 87870, *17-20 (M.D. Pa. June 25, 2012).  Accordingly, this court agrees with the overwhelming majority of circuit courts and district courts within the Third Circuit that require a plaintiff to allege, and eventually prove, intentional discrimination in order to be entitled to compensatory damages under the ADA and Section 504.

That said, the court will deny Defendants' motions in this regard.  The amended complaint alleges that "Paradise noted at least twelve incidents of Patrick's escalating behavior, and *was clearly aware* of these incidents and their potential to cause severe injury to Patrick and others."  (Doc. 43 ¶ 47) (emphasis added.) Plaintiff goes on to allege that "[n]evertheless, Paradise and Lincoln IU *knowingly failed* to address Patrick's behavioral concerns, even in light of the increasing danger Patrick posed to himself and others."  (*Id.*) (emphasis added.)  Plaintiff also alleges that "All defendants acted in bad faith, used gross misjudgment, and/or were

*deliberately indifferent* to Patrick's rights." (*Id.* ¶¶ 53, 57) (emphasis added.) Construing the amended complaint in Plaintiff's favor, the court finds that these allegations are sufficient to allow the court to plausibly infer intentional conduct by Defendants. Thus, the motions to dismiss will be denied on this issue.

### c. **Paradise Defendants**

Paradise Defendants additionally argue that Plaintiff's negligence cause of action (Count II) should be dismissed because the ADA only applies to "public entities" and Paradise Defendants are not "public entities" within the meaning of 42 U.S.C. § 12131. In addition, Paradise Defendants also argue that they are not "local educational agencies" within the meaning of the IDEA and, moreover, are not liable for monetary awards under the IDEA.

The court rejects Paradise Defendants' arguments because Count II of the complaint brings a negligence claim, not a substantive claim under the ADA or IDEA. Although Plaintiff alleges a breach of duty pursuant to the IDEA, the ADA, and Pennsylvania law in connection with Count II, the amended complaint also alleges that "Defendants Paradise, Catholic Charities, and the Diocese further failed to adequately supervise and train their staff, their program, Patrick, and other students/patients, and also failed to advise Lincoln IU and [the Pennsylvania Department of Education], as well as the District, that Patrick's program was inadequate to meet his needs." (Doc. 43 ¶ 60.) Thus, even if Paradise Defendants are not liable under the IDEA or ADA, Plaintiff has stated other allegations that could form the basis for a negligence claim. To the extent that Count II alleges a breach of duty under the IDEA and ADA as to Paradise Defendants, Plaintiff concedes that he will not argue that Paradise Defendants breached those duties, and

will therefore, presumably, argue breach of duty as a result of inadequate supervision and training of staff.  Accordingly, Paradise Defendant's motion will be denied

## IV.        <u>Conclusion</u>

In short, the court finds that the two-year federal IDEA statute of limitations is applicable to Plaintiff's denial of FAPE-based claims under Section 504 and the ADA, and Plaintiff is therefore limited to pursuing claims that accrued on or after May 13, 2009.   In addition, the court finds that intentional discrimination is a necessary element to a claim for compensatory damages under Section 504 and the ADA, and that Plaintiff's amended complaint sufficiently pleads such intent. Finally, the court finds that Plaintiff adequately stated a claim of negligence, but notes for the record that Plaintiff will be precluded from basing that claim on allegations of breach of duty under the IDEA or ADA as to Paradise Defendants.

s/Sylvia H. Rambo
United States District Judge

Dated:  August 6, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK B., a Minor, By and through his Parent, KESHIA B., of York, PA,** | : | **CIVIL NO: 1:11-CV-00927** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE PARADISE PROTECTORY AND AGRICULTURAL SCHOOL, INC.,** *et al.***,** | : | |
| | : | |
| **Defendants** | : | |

**O R D E R**

In accordance with the above memorandum, it is **HEREBY ORDERED** that Defendants' motions to dismiss (Docs. 46 and 47) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Defendant LIU's motion (Doc. 47) is **GRANTED** as to Defendants' statute of limitations argument.  To the extent that Plaintiff's claims in Counts I and II implicate the IDEA and Section 504, Plaintiff is barred from seeking relief from any alleged loss, deprivation, or damage allegedly caused by these FAPE violations that occurred prior to May 13, 2009.

2.  The motions are **DENIED** in all other respects.

        <u> s/Sylvia H. Rambo   </u>
         United States District Judge

Dated:  August 6, 2012.